Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 50441 | DATE | 1/10/2005 |
| CASE TITLE | MAURY vs. OGLE COUNTY SHERIFF'S DEPT., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendants' motion for summary judgment is granted. This case is dismissed in its entirety with prejudice.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | 1-12-05 date docketed | |
| | Notified counsel by telephone. | | | 62 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 1-11-05 date mailed notice | |
| ✓ | Copy to judge/magistrate judge. | | | |
| /SEC courtroom deputy's initials | | Date/time received in central Clerk's Office | OW mailing deputy initials | |

# ORDER

Plaintiff, Lisa M. Maury, a white woman, brings this action against her former employer, Ogle County, Illinois and Sheriff Melvin Messer, in both his individual and official capacities. Plaintiff's complaint alleges race discrimination (Count I) and sex discrimination (Count II) against Ogle County in violation of 42 U.S.C. § 2000e et seq. ("Title VII") and asserts a claim under 42 U.S.C. § 1983 ("Section 1983") against Messer in his official capacity (Count III) and individual capacity (Count IV) for deprivation of her First Amendment right to expression and deprivation of a liberty interest without due process of law in contravention of the Fourteenth Amendment. The court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5 (f) (3). Defendants move for summary judgment.

Plaintiff began working for defendants in September, 1998, as a part-time civilian corrections clerk, though she worked as a corrections officer on a full-time rotation through October 1998. Messer thought she was a suitable applicant for a full-time corrections officer position. Part of the process for becoming a full-time corrections officer involved having a psychological evaluation performed. Plaintiff's psychological evaluation was performed by Dr. Chiappetta who found her "unsuitable" in 7 of 37 categories. Dr. Chiappetta testified that plaintiff was an "unsuitable candidate" for correctional officer. It was his opinion she presented serious problems of judgment based on her actions when employed as a correctional officer elsewhere, her telling him she erroneously believed she had gotten out of paying some traffic tickets but was arrested for failing to pay the fines, and her telling him during the evaluation that the previous evening she was supposed to strip search a female inmate but did not do so when the inmate began to cry and tell her "tale of woe." The psychological test revealed plaintiff was anxious, impulsive, and tended to do things without due consideration as to what the consequences may be. Dr. Chiappetta deemed these traits to be a significant psychological problem in terms of being a correctional officer. Plaintiff was never made a full-time corrections officer. She continued to work as a part-time civilian corrections clerk. Her last day worked was April 13, 1999. She called the jail superintendent in June 1999 to ask why she had not been scheduled to work and was told her position had been filled. Defendant contends she was discharged for tardiness and absenteeism.

While it would appear rather straight-forward that a person found psychologically unsuitable for a job as a corrections officer would not be hired for that position nor remain employed in a corrections facility, there is a twist. On October 31, 1998, after Dr. Chiappetta conducted the psychological evaluation but before he sent his report to defendants, plaintiff took her children trick-or-treating to the jail. One of her children is one-half African-American. Her husband is white. She was questioned about this by a co-worker, Corporal Gerda Clark, the next time she worked and asked whether the child was the result of infidelity. Plaintiff had been scheduled to attend weapons training on November 4, 1998. She was advised by Lt. Beitel on November 2 or 3, 1998, that her training was cancelled. Messer told Beitel, within a day or so of the scheduled training, that plaintiff was not to go to the training. He offered no explanation to Beitel. The psychological evaluation report prepared by Dr. Chiappetta is dated November 2, 1998. The copy in the record bears a computer generated date at the bottom of November 6, 1998, which Dr. Chiappetta testified is the date that copy was printed out from his computer. Plaintiff contends these facts demonstrate that the "unsuitable" psychological evaluation was not the reason for her not receiving the correction officer's position. She maintains Messer decided not to give her the position after learning she had a mixed-race child and before he received or knew the content of the psychological evaluation. His cancelling her weapons training after October 31 and prior to November 7, when he would have received the psychological evaluation in the mail, proves, she says, that he had decided not to give her the position based on her mixed-race child not the evaluation. At a Merit Commission meeting on November 24, 1998, Messer told plaintiff she would not be getting the corrections officer position no matter what the Merit Commission decided. It was Messer's decision who to hire for the position. Plaintiff filed a charge of discrimination on February 22, 2000 and an amended charge on June 28, 2000.

Because plaintiff knew on November 24, 1998, that she was not going to get the corrections officer position, her denial of this position is outside the Title VII limitations period for the charge filed in February, 2000. Plaintiff acknowledges this in her brief stating that the discriminatory conduct is the termination of her part-time civilian employment in June or August, 1999, and that the prior occurrences are evidence of defendants' "ultimate discriminatory conduct." Pl. Memo. pp. 3-4. Defendant argues even that termination is outside the limitations period because plaintiff's last day of work was April 13, 1999, 315 days before the filing of the charge. However, there is no evidence plaintiff had been terminated or had any reason to think she'd been terminated prior to the June 1999 notification she was no longer an employee. The charge as it relates to her discharge is timely.

In order to prove a prima facie case of discrimination, plaintiff must show she was 1) a member of a protected class; 2) performing to her employers legitimate expectations; 3) suffered an adverse employment action and 4) similarly situated employees not in the protected class were treated more favorably. See Lucas v. Chicago Transit Auth., 367 F.3d 714, 728 (7th Cir. 2004). Defendants say plaintiff was discharged from her part-time civilian corrections clerk position because of tardiness and absenteeism. Plaintiff claims this is a pretext. She says she was never late and never failed to show up when scheduled for work. She says defendants fired her because she has a mixed-race child. Plaintiff has not presented any evidence that anyone with any decision making authority knew she had a mixed race child. The record shows only Clark, Deputy Torres, someone named Chris, and another woman saw her children on Halloween. There is no evidence anyone else knew. Plaintiff offers a hearsay statement that an acquaintance of hers, Joe Calso, had told her that Chief Wilkinson of the sheriff's office had referred to her "f***ing that nigger." But plaintiff's testimony about what Calso told her is hearsay and not admissible. Even if the statement were not hearsay, there is no evidence Wilkinson was the decision-maker or that his prejudice motivated the decision-maker's action so his statement is not admissible evidence of racial bias. See Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1100 (7th Cir. 2001). Plaintiff's race discrimination claim is based on her association with her child, who is half African-American. Without knowledge plaintiff was a member of a protected class, defendants' could not have discriminated against her based on her membership in that class. Cf. Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). ("Proof that an employer did not know of a plaintiff's membership in a protected class would likely preclude any assertion of pretext."). Plaintiff's race discrimination claim fails.

Plaintiff's sex discrimination claim fails because there is no evidence that similarly situated male employees were treated more favorably. Plaintiff argues she was replaced by a man but that argument goes to the time-barred claim concerning the corrections officer position. She presents no evidence of similarly situated males who were treated more favorably in relation to her discharge as a civilian corrections clerk.

Plaintiff claims Messer, in both his official and individual capacity, violated her constitutional right to freedom of expression by engaging in harassing behavior after she filed her charge of discrimination.[1] The expression in question is plaintiff's charge of discrimination. The first step in determining whether plaintiff's speech was constitutionally protected is to decide whether it addressed a matter of public concern which in turn requires a determination whether the point of the speech was to bring wrongdoing to light or to further a purely private interest. Kokkinis v. Ivkovich, 185 F.3d 840, 843-44 (7th Cir. 1999). Here, plaintiff's speech is her charge of discrimination. While discrimination is a matter of public interest, plaintiff's actions must be characterized as made to advance a purely private interest. Plaintiff took no action to bring alleged discriminatory practices to light beyond filing a charge in an attempt to resolve her own personal employment problem. She did not speak in any forum likely to reach the public. She simply followed the course the law requires of a person who wants to sue a former employer for damages under Title VII.

For the foregoing reasons, defendants' motion for summary judgment is granted. This case is dismissed in its entirety with prejudice.

---

[1] Plaintiff apparently has abandoned her deprivation of a liberty interest claim as she makes no argument concerning it and confines her Section 1983 claim to the freedom of expression issue.